Suit for divorce by Max Lieber against Jennie Lieber. From the decree, plaintiff appeals and defendant cross-appeals.
Affirmed.
Challenged on this appeal by the parties below are, hereinafter designated provisions of a final decree, entered in the Circuit Court of Dade County, Florida, which granted the husband a divorce and adjudicated property rights of the parties. The parties to this suit were married in 1906 and for many years thereafter resided in Cleveland, Ohio. Max Lieber moved to Dade County, Florida, and in September, 1946, instituted this suit. The wife, Jennie Lieber, by cross appeal, assigns and argues as error the provision of the decree which granted her husband a divorce on the ground of extreme cruelty.
The plaintiff-appellant is satisfied with the portion of the final decree which granted the parties a divorce and prays for an affirmance thereof by this Court. The record discloses that some time prior to the institution of this suit the plaintiff-appellant acquired by purchase a piece of real estate situated in Dade County, Florida, for the approximate sum of $41,000 and accepted a warranty deed thereto in the name of Max Lieber and Jennie Lieber, thereby creating an estate by the entirety. He contended in the Court below and here that Jennie Lieber agreed to return to him the sum of $20,500, being one-half of the purchase price of the Dade County property, but she failed so to do and he requested the Court below to enter a decree requiring her to return said sum or in the alternative for the wife to convey to the husband her interest in and to the said property. The Court below held against this claim and it is argued that this part of the decree is erroneous.
The sufficiency of the evidence to sustain the provision of the decree of divorce on the ground of extreme cruelty is challenged on this appeal. It appears from the testimony that the parties, from the time of the marriage until 1912, encountered financial difficulties in making a living. The husband's income was around $10 per week, supplemented by a small weekly income earned as a musician. The wife kept boarders and the testimony discloses that she was a faithful and dependable helpmate. The husband went into the leather *Page 112 
goods business and the same proved profitable and the wife assisted him in every possible manner. The only child was born in 1913. The husband later went into the luggage business and followed this line until 1944, when he suffered a heart attack.
It appears that Max Lieber, over the years, was successful in the luggage business and accumulated considerable real property and took title thereto in his own name. The wife, Jennie Lieber, during March, 1942, filed a suit in the Ohio courts praying for a divorce but this suit was later withdrawn after a property settlement between them had been agreed upon. In this property settlement Max Lieber's net worth was estimated and fixed at the sum of $350,000. The terms of the property settlement signed by the parties in November, 1943, gave Jennie Lieber property valued at $155,000.
It appears from the evidence that but little, if any, friction existed between the parties in the early period of their married life when they were struggling and overcoming obstacles in their common fight for the necessities of life. Success in business and the accumulation of property brought to their home disputes and misunderstandings. She charged that she and the home were neglected in proportion to the prosperity of his business. It was his view that the wife gave too much of her time to society; the attendance by her of symphonies, twilight concerts, bridges and teas. The husband thought that the wife assumed a superior attitude and looked down upon him and became the boss of the Lieber home. It is not disputed that Max Lieber had a coronary thrombosis after the Ohio litigation with his wife and sold his business thereafter and retired at sixty-five. He charged that his wife neglected him in his illness and this, with other charges of misconduct, amounted in law to extreme cruelty. There is sufficient evidence in the record to sustain this conclusion. See Farrington v. Harrison, 95 Fla. 769, 116 So. 497.
It is true, as shown by the record, that the husband took title to the Miami Beach property in the names of Max Lieber and Jennie Lieber after their 1943 property settlement and prior to filing this suit in 1946. We find disputes and conflicts in the evidence on the point that the wife agreed but failed to refund the sum of $20,500 to the husband as a consideration for the one-half interest to the Miami Beach property. It is difficult to understand this transaction in light of the husband's testimony after so many clashes with his wife over property rights, as reflected by the record. It is an established rule that when property is purchased by the husband and deeded to the husband and wife jointly, an estate by the entireties is created and the presumption of law is that such property was intended as a gift to the wife and such property interest will be recognized and upheld until the presumption is overcome by competent evidence. Kollar v. Kollar, 155 Fla. 705, 21 So.2d 356; Baxter v. Baxter,158 Fla. 886, 30 So.2d 492, and similar cases. From a study of all the evidence, we conclude that the plaintiff-appellant failed to carry the burden of proof by law cast upon him.
It is next contended that the Chancellor below erred by the terms and provisions of the final decree which awarded to the Special Master compensation in the sum of $1,250 for services rendered in this cause. Section 3 of the report of the Special Master is viz: "(3) That said (proposed) decree provide that all costs herein be paid by the plaintiff, Max Lieber, including the fee of your Master, which is hereby fixed at the sum of $1,250.00." This question was raised by plaintiff-appellant's exception to the Master's report (Tr. p. 348), and by assignment No. 9 (Tr. p. 357). The final decree recites, "plaintiff's exception to the amount of the Master's fee and the recommendation of the Master that all costs be paid by the plaintiff, which exception not having been urged or argued before the Court, is considered to have been abandoned." Counsel's reply to the recital is, viz.: "The exception was brought to the attention of the Court at the hearing but no argument was made because the amount was so excessive that no argument was deemed necessary." Counsel suggests that the Master's fee should not exceed $350. *Page 113 
The record discloses that 290 pages of testimony were adduced by the parties, or witnesses in their behalf, before the Special Master as follows: The first hearing consisted of 31 pages taken on March 6, 1947. The second hearing consisted of 6 pages taken on June 13, 1947. The third hearing consisted of 75 pages taken on August 15, 1947. The fourth hearing consisted of 121 pages taken on August 29, 1947. The fifth hearing consisted of 41 pages taken on September 22, 1947, and the sixth hearing consisted of 29 pages taken on October 31, 1947. The written report of the Special Master to the Chancellor, based on the hearings before him, comprised some 6 1/2 pages. The record fails to disclose complicated accounts or difficult issues of fact or deeply involved principles of law. The parties litigant, as shown by the record, made a property settlement in the State of Ohio prior to the institution of the suit at bar. The husband contended, it is true, that he never gave his wife an interest in the Dade County property but the Master decided this issue against him and did so correctly. Section 62.07, F.S.A., prescribes the compensation of Masters in Chancery. Additional compensation for Masters to the statutory fees for extraordinary or special services rendered was approved in Marion Mortgage Co. v. Moorman, 100 Fla. 1522,131 So. 650; Mabry v. Knabb, 151 Fla. 432, 10 So.2d 330. See Koonan's Florida Chancery Pleading and Practice, Section 141.
The decree appealed from is dated March 4, 1948, and a petition for rehearing was never made or presented nor appears in the record. The record discloses a stipulation of counsel dated April 19, 1948, and a pertinent provision thereof is viz.: "It is stipulated by and between the undersigned attorneys for the respective parties hereto that the court costs, Master's fee and Court Reporter's fee have been duly paid, and that this stipulation be inserted in the transcript in proof of such payment." In other words, the plaintiff-appellant has paid the $1250.00 Master's fee allowed by the final decree, as shown by the above stipulation, and, after a full compliance therewith by voluntary payment of the allowance, now requests this Court to hold the sum of $1250. excessive compensation as a Master's fee.
Payment by the plaintiff-appellant of the $1250 relieves this Court of its duty under the law to rule upon the contention as the assignment becomes moot and is equivalent to an abandonment or waiver of the contention. Any attempt by a mere colorable dispute to obtain the opinion of the court upon a question of law, where in fact there is no real controversy, is not countenanced by the courts. Lord v. Veazie, 49 U.S. 251, 8 How. 251, 12 L.Ed. 1067.
We fail to find error in the record.
Affirmed.
ADAMS, C.J., and BARNS and HOBSON, JJ., concur.