ALLEN, Chief Judge.
The appellee, as plaintiff in the lower court, filed an action for divorce from the appellant-defendant alleging that the defendant was guilty of acts of desertion and acts of extreme cruelty; and that plaintiff should be granted a divorce and the real property, held as tenants by the entirety, should be declared the property of the plaintiff. The defendant answered denying the acts of cruelty and requested that the divorce not be granted. After a final hearing the court granted plaintiff the requested divorce and decreed that the real property should be conveyed to plaintiff within 10 days, but if not so conveyed, the decree would constitute such a conveyance.
The plaintiff, 69 years old, and the defendant, 70 years old, were married November 24, 1956, in Steubenville, Ohio, but have since established residence in Clear-water. No children were born of the marriage and the only property involved is a home in Clearwater which was purchased with plaintiff’s funds after the parties were married.
The plaintiff testified that the defendant moved her furniture out of their home on April 15, 1959, and, although defendant would return for a day or a few days from time to time, they had not cohabited as husband and wife since that date. The plaintiff suffers from a nervous condition and underwent hospitalization several times during the period the parties were married. The plaintiff testified that the defendant left him on eight different occasions accusing him that there were other women in his life; that he never asked the defendant to come back; that when defendant did come back she would' stay only a few days and then “blow up” and leave again; that when defendant did return they slept in the same bedroom; that in November, 1959, he went to Ohio and brought defendant back to Florida and on the trip they slept in the same hotel and motel room; and that the real mental cruelty was the constant accusations relating to other women and the repeated leaving and returning only to leave again on the part of the defendant.
The plaintiff put on witnesses who stated that plaintiff’s health appeared to have improved since the parties separated, that the defendant had left the parties’ home on two or three occasions; but none of the witnesses testified as to specific marital trouble between plaintiff and defendant. The defendant did not put on any evidence.
The appellant contends that by sleeping in the same room with defendant during the period following the initial “desertion” on April 15, 1959, the plaintiff has failed to prove a continued desertion of one year. The appellee contends that cohabitation as husband and wife terminated on April 15, 1959, by the act of defendant leaving and *751 taking her belongings (furniture and clothing) with her.
As to extreme cruelty, the appellant contends that none of plaintiff’s witnesses corroborated his testimony as to alleged arguments and repeated leaving, returning and leaving again after accusing plaintiff of being interested in other women. The appellee contends that the witnesses corroborate the repeated absences of defendant; that such conduct by defendant toward a 70 year old sick man constitutes extreme cruelty; and that after plaintiff went up north to bring defendant back she told him she was only using him to get back to Florida.
The appellant contends that there is a presumption of gift of one half of the property to the wife under a tenancy by the entirety and that plaintiff has failed to overcome this presumption. The ap-pellee contends that he and defendant were to pay for the home 50-50 but that defendant wanted to leave her money in the bank until the interest period was up; that appellee went ahead and advanced the •entire consideration for the home. Appel-lee testified that title was taken as tenants by the entirety as a convenience and that at the time of the purchase he desired that defendant should have the home if anything happened to appellee. He also testified that the parties had made mutual wills to that effect.
We have read the testimony in this case and, while the evidence of extreme cruelty is not too strong, the circuit judge. has found that the evidence was sufficient to grant a divorce to the appellee and we affirm his decision in granting a divorce.
We shall reverse the decree insofar as it orders the appellant-wife to convey her interest in the property, which is held as an estate by the entirety. We do not find in the record sufficient evidence to overcome the presumption of a gift to the wife.
The complaint states:
“ * * * On December 15, 1958, the parties purchased a home with the Plaintiff’s funds and as a matter of convenience the Plaintiff herein caused the title to be registered under the name of John C. McFarland' and Muriel M. McFarland, his wife. This property is more particularly described as:
******
“That although the Plaintiff’s funds were used to purchase the home he has, in addition to maintaining the home, been making the current mortgage payments required.”
The appellee, John C. McFarland, plaintiff below, testified as follows:
“Q. Is this home owned individually or jointly with your wife? A. Jointly with my wife.
. * * * * * *
“Q. When you moved to Clearwater; what arrangements, if any, did you make with reference to the purchase of your home? A. We had agreed before we came to Clearwater, any place that we bought, that we would pay fifty-fifty on the house.
“Q. In fact, did you pay your fifty percent? A. I paid better than fifty.
“Q. Did your wife pay her portion? A. No, sir.
“Q. Mr. McFarland, did your wife pay anything toward the purchase of the home? A. Not a cent.
“Q. Can you explain to the Court why you took the title jointly in this property? A. Yes, sir. She — at the time we bought the house agreed she was going to pay her share. She didn’t want to take her money out of the bank until the interest period was up and that was O.K. and we put her name on the deed and then she said she wouldn’t go through with. it.”
*752 On cross-examination the witness testified :
“Q. Now you purchased this property described as Lot six, Block B in Parkwood in December of ’58? A. Yes, sir.
“Q. According to your complaint here, that was made in your joint names at that time? A. Uh huh.
“Q. And it was with the thought — ■ you had no children to leave the property to, did you? A. No, sir.
“Q. And you understood, at the time, that you took it in your joint names, if anything happened to you that it would go to her, did you not? A. That is right.
“Q. And if anything happened to her that it would go to you? A. Yes, sir, we made joint wills to the effect.
“Q. That was perfectly agreeable with you at the time you bought the property? A. Yes.”
This action for divorce was brought approximately two years after the purchase of the property in question. There was no testimony that the plaintiff took any action with reference to this property, which he knew was purchased as an estate by the entirety, and that the effect of such purchase was that on the death of either of the parties the sole interest vested in the other.
In the case of Hargett v. Hargett, 156 Fla. 730, 24 So.2d 305, the Supreme Court upheld a divorce decree in which the lower court awarded to the husband the property of the parties held as an estate by the entirety “for the reason that plaintiff was advised and believed at the time said deeds were delivered to him that title to real estate in Florida could be held in no other way.”
The Court, in its opinion, said:
“It is the law of this jurisdiction that where property is purchased by the husband and deeds are taken by the husband and wife jointly an estate by the entireties is created, and the presumption of law is that it was intended as a gift to the wife, which will be upheld until overcome by conclusive evidence. Francis v. Francis, 133 Fla. 495, 182 So. 833; Strauss v. Strauss, 148 Fla. 23, 3 So.2d 727; Kollar v. Kollar, 155 Fla. 705, 21 So.2d 356.”
In Kollar v. Kollar, supra, the Supreme Court reversed the chancellor on his finding, stating [155 Fla. 705, 21 So.2d 358]:
“ * * * The chancellor found in his decree that ‘the defendant acquired the land, built the home, and maintained it, with his own funds; the plaintiff neither made any contribution of funds to this source nor any other source, to assist the defendant, nor did she render any services above and beyond the ordinary marital duties as his wife; while, on the other hand, the defendant amply cared for the plaintiff, and in addition thereto, has given her certain valuable property rights, including an automobile. Under the circumstances of the case, it thus appears that the defendant did not intend to give the plaintiff an interest in the home place, and, therefore, defendant is entitled to the relief which he seeks in such property.’ ”
The Court then stated:
“We find ourselves unable to agree with the conclusion reached by the chancellor on this point. It is the rule that when property is purchased by the husband and deeded to the husband and wife jointly, an estate by the entireties is created and the presumption of law is that such property interest was intended as a gift to the wife, and such property interest will be recognized and upheld until the presumption is overcome by conclusive evidence. Strauss v. Strauss, 148 Fla. 23, 3 So.2d 727. We are of opinion that the husband has failed to meet the burden.
*753 It is true, as found by the learned chancellor, that the original purchase of the property was made with funds of the husband, and that he has furnished the home and maintained it at his sole expense. The husband has also denied that at the time of the transaction he intended a gift of a property interest to his wife. But we cannot overlook the fact that in the record there appears the sworn statements of the husband, made not once but several times, that when he purchased the property he advised his wife that he had placed it in both names; that he ‘figured on giving half; that he wanted her to have it if he died so that she would have a source of income to maintain herself and the children. * * * ”
In Lovejoy v. Lovejoy, 1948, 160 Fla. 652, 36 So.2d 192, the Supreme Court upheld a decree which awarded the entirety property to the husband, which property had been purchased with the husband’s funds. The opinion does not give the facts, but Chief Justice Thomas, in a dissenting opinion, stated:
“I cannot agree to the ruling that the estates by the entirety should be upset because the husband, 53 years old with enough business acumen to amass a fortune, didn’t know what he was doing.”
In the case of Fletcher v. Fletcher, 1961, 128 So.2d 434, 435, recently decided by the First District Court of Appeal, the court said:
“A decree of absolute divorce destroys an estate by the entireties and converts the husband and wife into joint tenants, in which relation they are equally interested. Strauss v. Strauss, 148 Fla. 23, 3 So.2d 727. This is in accord with F.S. [§] 689.15, F. S.A. The trial court erred in awarding to the husband exclusive title to property held by the entireties, even though the proofs reflect that he alone contributed the funds with which to purchase the property. The presumption of a gift to the wife of her interest is not overcome.”
The decree appealed is affirmed in part and reversed in part and the cause remanded for further proceedings not inconsistent with this opinion.
Affirmed in part, reversed in part.
KANNER and SHANNON, JJ., concur.